**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRADY K., individually and on behalf of A.K., a minor,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 1:25 C 759** |
| **HEALTH CARE SERVICE CORPORATION d/b/a/ BLUE CROSS BLUE SHIELD OF TEXAS,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Brady K., individually and on behalf of A.K., a minor, has sued Health Care Service Corporation d/b/a/ Blue Cross Blue Shield of Texas (Blue Cross), alleging violations of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), (3), and the Mental Health Parity and Addiction Equity Act (Parity Act), 29 U.S.C. § 1185a. Blue Cross has moved to dismiss K's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the Court denies the motion.

**Background**

From January 2023 through April 2024, A.K. received medical care and treatment at Maple Lake Academy and New Focus Academy—two Utah mental health and behavioral treatment facilities—for issues including "autism spectrum disorder, aggression, ADHD, age-inappropriate tantrums, and other undesirable behaviors such as urinating on the floor." Am. Compl. ¶ 9. At all relevant times, A.K. was a beneficiary

of a fully insured welfare benefit plan administered by Blue Cross under ERISA. Blue Cross denied preauthorization and coverage for A.K.'s treatment at both facilities, explaining verbally during preauthorization conversations that coverage for the services would be denied due to a lack of 24-hour on-site nursing at the facilities.

Brady appealed the denials, asserting his rights under ERISA to a full and fair review and disclosure of specific reasons for the adverse determination. He also expressed concern that Blue Cross was violating the Parity Act by imposing a 24-hour on-site nursing requirement for residential treatment centers (RTC), like Maple Lake and New Focus, but not for analogous medical or surgical services such as skilled nursing (SNF), subacute rehabilitation, and inpatient hospice facilities. Finally, he asked Blue Cross to conduct a compliance analysis under the Parity Act, and for documents pertaining to the plan's operation. Blue Cross rejected both appeals and confirmed that coverage had been denied at both facilities because they did not meet the 24-hour on-site nursing requirement for RTCs.

Brady then communicated his intent to take legal action and, after receiving no response, filed this lawsuit. In Count 1, he alleges that Blue Cross violated its fiduciary duties under ERISA by denying coverage in violation of the plan terms and failing to provide adequate review and explanation for the denials. In Count 2, Brady alleges that Blue Cross violated the Parity Act by imposing more stringent criteria—namely, the 24-hour on-site nursing requirement—for mental health treatment benefits than for substantially all analogous medical or surgical benefits.

**Discussion**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint

2

for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the facts alleged "allow[] the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put differently, the "[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) (quoting *Twombly*, 550 U.S. at 555). In ruling on a 12(b)(6) motion, a court must accept all well-pleaded facts as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024).

## A.    Count 1—ERISA

Brady's ERISA claim rises or falls with his Parity Act claim. As relevant in this case, ERISA authorizes a cause of action for beneficiaries "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Brady does not allege that Maple Lake or New Focus met the 24-hour on-site nursing requirement imposed by his welfare benefit plan with Blue Cross. Rather, he argues that the requirement is invalid under the Parity Act and that A.K.'s treatment otherwise qualified for coverage. Blue Cross does not contest the latter point. Thus if Brady is right that the requirement violates the Parity Act, then he can recover under ERISA because coverage was "due to him under the terms of his plan." *See Brian W. v. Health Care Serv. Corp.*, No. 24 C 2168, 2025 WL 306365, at *2 (N.D. Ill. Jan. 27, 2025). *See REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d

3

693, 699 (7th Cir. 2008) ("If a provision of a contract violates a statute . . . that provision is void.").  If the 24-hour on-site nursing requirement does not violate the Parity Act, then Brady cannot recover under ERISA because the plan, by its terms, did not cover A.K.'s treatment.

As discussed below, Brady has plausibly alleged that the 24-hour on-site nursing requirement violates the Parity Act.  Accordingly, the Court denies Blue Cross's motion to dismiss Count 1.

**B.    Count 2—Parity Act**

The Parity Act mandates that:

> a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits . . . shall ensure that . . . the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A).  In other words, the Parity Act generally prohibits health plans from disfavoring mental health and substance abuse care, by requiring parity between the limitations on those treatments and the limitations on treatments for other medical conditions.

The implementing regulations for the Parity Act provide further guidance.[1]  They

---

[1] The Court need not decide what deference, if any, to accord to these regulations.  *Cf. Midthun-Hensen ex rel. K.H. v. Grp. Health Coop. of S. Cent. Wis., Inc.*, 110 F.4th 984, 988 (7th Cir. 2024) ("ERISA authorizes rulemaking . . . and we need not address how *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), applies to regulations adopted under an express delegation.").  The parties here have not raised the issue, and they treat the regulations as binding in their briefs.  Just as importantly, it does not affect the outcome of this motion.

4

state that "plans and issuers must not design or apply . . . treatment limitations that impose a greater burden on access (that is, are more restrictive) to mental health or substance use disorder benefits . . . than they impose on access to medical / surgical benefits in the same classification."  29 U.S.C. § 2590.712(a)(1).  The regulations set out six classifications:  (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; (6) prescription drugs.  *Id.* § 2590.712(c)(2).  The parity requirement applies to "quantitative" and "nonquantitative" treatment limitations (NQTL).  *Id.* § 2590.712(a)(1), (c)(3)–(4).  The parties agree that the 24-hour on-site nursing requirement is an NQTL.

The implementing regulations provide that a "plan . . . may not impose any [NQTL] with respect to mental health or substance use disorder benefits in any classification that is more restrictive, as written or in operation, than the predominant [NQTL] that applies to substantially all medical / surgical benefits in the same classification."  *Id.* § 2590.712(c)(4).  The regulations additionally specify that a plan may impose NQTLs on mental health or substance use disorder benefits only if:

> under the terms of the plan . . . , as written and in operation, any processes, strategies, evidentiary standards, or other factors used in designing and applying the [NQTL] to mental health or substance abuse disorder benefits in the classification are comparable to, and are applied no more stringently than, the . . . factors used in designing and applying the limitation with respect to medical / surgical benefits in the classification.

*Id.* § 2590.712(c)(4)(i)(A).  In sum, the Parity Act requires plans to ensure that NQTLs and the factors used to design them do not disfavor, "as written or in operation," mental health or substance use disorder benefits.

### 1.    Pleading standard

The Seventh Circuit has not yet established the pleading standard for stating a

Parity Act claim. *Brian W.*, 2025 WL 306365, at *6. But many district courts, and at least one court of appeals, have interpreted the "as written and in operation" language as permitting plaintiffs to raise facial or as-applied challenges to treatment limitations. *See E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1284 (10th Cir. 2023). The Court agrees and adopts the same distinction.

As for the elements of a Parity Act claim, some district courts have adopted a four-element test requiring the plaintiff to allege, and ultimately show, that:

> (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical / surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical / surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical / surgical benefit to which it is being compared.

*Id.* at 1282 (citing cases). Some courts have utilized a three-part test requiring the plaintiff to:

> (1) identify a specific treatment limitation on mental health benefits; (2) identify medical / surgical care covered by the plan that is analogous to the mental health / substance abuse care for which the plaintiffs seek benefits; and (3) plausibly allege a disparity between the treatment limitation on mental health / substance abuse benefits as compared to the limitations that defendants would apply to the covered medical / surgical analog.

*Id.* (citing cases).

Other district courts, including within this circuit, have rejected the latter standard, reasoning that "plaintiffs at the pleading stage usually do not have specific information to identify treatment disparities, specific processes defendants use, or analogous services." *See, e.g.*, *C.W. v. United Healthcare Servs., Inc.*, No. 23 C 4245, 2024 WL 3718203, at * 3 (N.D. Ill. Aug. 8, 2024) (citing cases). Instead, they focus on the "core question emerging in this Circuit for courts to ask when assessing whether a plaintiff

6

sufficiently alleges a Parity Act claim: does the plaintiff plausibly allege that their health insurance plan applies a separate or more restrictive treatment limitation to mental health and substance abuse services versus medical / surgical services?" *Id.* (citing cases).

In this case, whichever test is used, the parties' only dispute is over whether the 24-hour on-site nursing requirement creates a disparity in treatment limitations for mental health benefits versus those for medical / surgical analogs. As a result, the Court need not adopt a specific test because the analysis and outcome is the same irrespective of which of the three tests is used.

### 2. Sufficiency of allegations

Brady's allegations raise three bases upon which the 24-hour on-site nursing requirement is claimed to violate the Parity Act. The Court addresses each in turn.

#### a. Facial disparity

Brady's first theory is that the plan facially violates the Parity Act by imposing a 24-hour on-site nursing requirement for RTCs but not for analogous medical / surgical care such as SNFs. Blue Cross contends that the plan does impose the same requirement on SNFs (and other comparable medical / surgical analogs) because it requires them to meet state licensing or Medicare / Medicaid requirements, which in turn require 24-hour nursing.

Blue Cross's argument fails for two reasons. First, an express 24-hour on-site nursing requirement is different from a treatment limitation that incorporates extrinsic standards such as state licensing or Medicare / Medicaid provisions, even if those extrinsic standards impose the same express requirement. Thus Brady's plan imposes

a "separate treatment limitation[] that [is] applicable only with respect to mental health or

substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). It is possible that

incorporating state and federal law means that the 24-hour on-site nursing requirement

is no more restrictive in practice, but the implementing regulations for the Parity Act

specify that they must also be no more restrictive "as written." *Id.* § 2590.712(4).

Accordingly, Blue Cross's argument only works if, for purposes of the parity analysis,

incorporating state and federal law is equivalent to writing those laws' treatment

limitations into the plan. It is not.[2]

 To illustrate why, consider a plan that limits coverage to treatment that is lawful

under applicable state and federal law. Under Blue Cross's interpretation, any

requirements imposed by state and federal law would be treated as expressly written

---

[2] The cases that Blue Cross relies on are inapposite. The court in *C.B. v. Blue Cross v. Blue Shield of Ill.*, No. 23 C 1206, 2024 WL 1003687 (N.D. Ill. Jan. 9, 2024), rejected the argument that the 24-hour nursing requirement violated the Parity Act as a "profound deviation from generally accepted standards of medical practice for residential treatment care[.]" The comparison there was between the nursing requirement and generally accepted standards of care, rather than between the nursing requirement and a separate requirement incorporating state and federal standards. Other courts have more squarely addressed the issue presented here and sided with the plan providers, but they did so regarding an as-applied rather than facial challenge, or where the plaintiffs did not dispute that SNFs were also subject to a 24-hour nursing requirement. *See, e.g.*, *R.J. v. BlueCross BlueShield of Tex.*, No. 23-cv-00177-PAB-STV, 2024 WL 1257524, at *9 (D. Colo. Mar. 25, 2024) (dismissing as-applied challenge); *J.W. v. Bluecross Blueshield of Tex.*, No. 1:21-cv-21, 2022 WL 2905657, at *5–*6 (D. Utah July 22, 2022) (same). *See also M.P. v. BlueCross Blueshield of Ill.*, No. 2:23-cv-216-TC, 2023 WL 8481410, at *3 (D. Utah Dec. 7, 2023) ("Plaintiffs here do not dispute that under the Plan the analogous intermediate levels of care at skilled nursing facilities or inpatient rehabilitation hospitals also include 24-hour nursing requirements."). Moreover, district courts in this circuit have held that allegations similar, if not identical, to those in this case stated a plausible facial violation. *See C.M. v. Health Care Serv. Corp.*, No. 24 C 2122, 2025 WL 933847, at *5–*6 (N.D. Ill. Mar. 27, 2025); *Brian W.*, 2025 WL 306365, at *5–*6. Recognizing that none of these decisions are binding, the Court agrees with the latter set of cases to the extent that they conflict with those cited by Blue Cross.

into the plan. And if those laws imposed any requirements for mental health treatment but not for other forms of treatment (e.g., requiring a Ph.D. in Psychology to prescribe drugs), the limitation that only lawful treatment will be covered would constitute a facial violation of the Parity Act. [3] The Court declines to adopt this interpretation. In any event, Blue Cross's argument fails for a second reason: Medicare / Medicaid provisions do not clearly impose the same 24-hour on-site nursing requirement that the plan does. The plan requires RTCs to have "24 hour onsite nursing service." In contrast, it requires SNFs to meet either state licensing or Medicare / Medicaid requirements. The relevant Medicare / Medicaid provision, however, requires SNFs to "provide 24-hour licensed nursing service" but does not specify that the service must be on site. 42 U.S.C. § 1395i-3(b)(4)(C)(i). That difference is material here because it permits the Court to reasonably infer that the plan's requirement for RTCs is "more restrictive" or a "separate treatment limitation[]" as compared to those for medical / surgical care like SNFs. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii). That is enough to state a plausible Parity Act claim.

In sum, Brady has stated a viable facial Parity Act challenge under this theory.

### b.    Interaction with generally accepted standards requirement

Brady also alleges that the 24-hour on-site nursing requirement violates the Parity Act because Blue Cross "relies on generally accepted standards of care and the standards of licensing, regulatory, and accreditation entities to develop its medical necessity guidelines . . . but holds residential treatment to a stricter standard what is

---

[3] This would mean that the plan's limitation of coverage to "[m]edically [n]ecessary" services would likely violate the Parity Act because it incorporates "generally accepted standards of medical practice," which almost certainly differ between mental health treatment and other forms of medical treatment. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. 1 at 72.

advised and considered appropriate by [those entities]." Compl. ¶ 64. He contends that this can create a parity violation "even when the terms at issue are facially neutral, such as [a 24-hour nursing requirement], because 24 / 7 onsite nursing care is often part of generally accepted standards of care for . . . medical and surgical treatment but . . . not . . . residential treatment facilities." *Id.* ¶ 65. The effect, he alleges, "is to significantly limit access to coverage for intermediate level mental health and substance use disorder treatment compared to [analogous] medical and surgical treatment in a way that violates [the Parity Act]." *Id.* ¶ 66.

Blue Cross interprets these allegations as an admission that the plan imposes the 24-hour on-site nursing requirement on SNFs. It also contends that the allegations fail to state a claim because the Parity Act does not prohibit plans from going beyond generally accepted standards of medical practice or state or federal law requirements. Blue Cross emphasizes that the Parity Act "is not a benefits mandate that requires coverage of particular services or standards" and that "courts reject the notion that a plan violates [the Parity Act] by imposing requirements beyond those required under state or federal law." Def.'s Mem. in Supp. of Mot. to Dismiss at 8.

These arguments misread the significance of Brady's allegations. Brady's allegations, as explained in his brief, "describe . . . another theory of liability—namely, that *even if* the terms of the plan *were* facially neutral and universally required 24/7 onsite nursing . . . , such a requirement would constitute an *as-applied* violation of the Parity Act." Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 9. The theory, it appears, is that the plan's medical necessity requirement—which limits medically necessary treatment to be that which is "consistent with generally accepted standards of medical

10

practice"—and the plan's 24-hour on-site nursing requirement for RTCs operate in tandem to deny coverage for RTCs because 24-hour on-site nursing is not a generally accepted standard for RTCs.  In other words, an RTC cannot meet both requirements because if it has 24-hour on-site nursing, it will no longer be considered medically necessary.  This reading of the allegations is bolstered by paragraph 67 of the complaint, which alleges that "[d]espite the differences in generally accepted standards of care between mental health . . . facilities and skilled nursing . . . facilities, by requiring 24-hour onsite nurses for all intermediate inpatient treatment, [Blue Cross] is able to effectually exclude coverage for nearly all residential treatment facilities."  Compl. ¶ 67.

With that clarification, the allegations at paragraphs 64 and 65 are illustrative, not contradictory admissions as Blue Cross claims.  More importantly, Blue Cross's arguments on the merits miss the point.  The alleged violation does not involve going beyond generally accepted standards of practice or state or federal law requirements. Rather, it involves imposing a set of requirements that operate together to effectively carve mental health treatment (but not other forms of treatment) out of the plan's coverage.

Brady also offers factual support for this theory, alleging that "[r]equiring 24/7 on-site nursing when most RTC patients do not need it unnecessarily inflates the cost of residential treatment without contributing to the probability of successful treatment."  *Id.* ¶ 68.  Blue Cross argues that this "bald assertion . . . is wholly conclusory and the Court should disregard it."  Def.'s Mem. in Supp. of Mot. to Dismiss at 9.  The allegation, however, is a factual contention that the Court must accept as true at the pleading stage. *Emerson*, 109 F.4th at 941.  Blue Cross's contention that "24/7 onsite nursing

likely saves money by providing faster, more robust care" further illustrates the factual nature of the issue. Def.'s Mem. in Supp. of Mot. to Dismiss at 9 n.6. Blue Cross additionally argues that "[u]nder the rules of contract construction, the 24/7 onsite nursing requirement for RTCs must be read in harmony with the Plan's necessity requirement," such that RTCs with 24-hour on-site nursing do qualify as medically necessary. *Id.* at 10. But the question is not one of interpretation that can be resolved by a canon of construction; the question is how Blue Cross in fact administered the plan. That factual dispute must be resolved in Brady's favor at this stage of the case.

Because Brady plausibly alleges that the 24-hour on-site nursing requirement, combined with the medical necessity requirement, is "more restrictive . . . in operation" for mental health treatment than for medical / surgical treatment, he has stated a viable as-applied Parity Act challenge under this theory.

### c. Network disparity

Finally, Brady alleges that the plan "fail[s] to provide a comparable degree of network residential treatment facilities compared to the degree of network skilled nursing and inpatient rehabilitation facilities[,] . . . result[ing] in a coverage disparity that violates [the Parity Act]." Compl. ¶¶ 79–80. He points out that there is only a "single in-network residential facility available in a 140-mile radius of [his] home" and that "imposing a 24-hour nursing requirement . . . drastically limits the availability of residential care." *Id.* ¶ 78. Blue Cross argues that these allegations advance an improper disparate impact theory that is not cognizable under the Parity Act. According to Blue Cross, "NQTLs, such as the 24/7 onsite nursing requirement, do not violate [the Parity Act]—even if they produce disparate results—if the processes and strategies

12

used to develop the NQTLs are comparable and no more stringently applied to mental health benefits as compared to medical / surgical benefits."  Def.'s Reply in Supp. of Mot. to Dismiss at 12.

The Court need not decide whether disparate impact alone may qualify as a Parity Act violation because the allegations in the complaint permit the Court to reasonably infer a disparity in the "processes, strategies, standards, or other factors" used to develop and apply the NQTLs for mental health benefits as compared to medical / surgical benefits.  Brady's allegations do not focus solely on the outcome— disparity in coverage—but rather expressly draw a connection between that outcome and the process behind the NQTL.  He alleges:

> [Blue Cross] violates [the Parity Act] because the terms of the Plan . . . , as written or in operation, use . . . factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the . . . factors used to limit coverage for medical / surgical treatment in the same classification.

Compl. ¶ 81.  To be sure, this by itself is a "threadbare recital[] of a cause of action's elements" that the Court is not required to accept as true.  *See Iqbal*, 556 U.S. at 663. But the point is that it channels the factual allegations—the lack of in-network residential treatment facilities in the area, and the allegations that Blue Cross never provided any information about its compliance with the Parity Act—to create a reasonable inference that Blue Cross's process in selecting and applying the 24-hour on-site nursing requirement violated the Parity Act.  It is unreasonable to require Brady to provide more information about those internal processes at this stage.  *See C.W.*, 2024 WL 3718203, at * 3.

Brady has stated a viable as-applied Parity Act challenge under this theory.

**Conclusion**

In conclusion, the Court denies Blue Cross's motion to dismiss [dkt. 25]. Defendants are directed to answer the remaining claims by October 23, 2025. The parties are directed to confer regarding a comprehensive discovery and pretrial schedule and are to file a joint status report with a proposal by October 14, 2025. The case is set for telephonic status hearing on October 21, 2025 at 8:50 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

MATTHEW F. KENNELLY
United States District Judge

Date:  September 25, 2025