**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRADY K., individually and on behalf of A.K., a minor,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 25 C 759** |
| **HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF TEXAS,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Brady K., individually and on behalf of A.K., a minor, has sued Health Care Service Corporation d/b/a/ Blue Cross Blue Shield of Texas (Blue Cross), alleging violations of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), (3), and the Mental Health Parity and Addiction Equity Act (Parity Act), 29 U.S.C. § 1185a. For the sake of simplicity, the Court will refer to the plaintiffs collectively as "Brady." Blue Cross has moved to dismiss Brady's amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a motion that the Court converted in part to a motion for summary judgment on May 15, 2026. For the following reasons, the Court denies the motion.

## Background

From January 2023 through April 2024, A.K. received medical care and treatment at Maple Lake Academy and New Focus Academy—two Utah mental health and behavioral treatment facilities—for issues including "autism spectrum disorder,

aggression, ADHD, age-inappropriate tantrums, and other undesirable behaviors such as urinating on the floor." Am. Compl. ¶ 9. At all relevant times, A.K. was a beneficiary of a fully insured welfare benefit plan administered by Blue Cross under ERISA. Blue Cross denied preauthorization and coverage for A.K.'s treatment at both facilities, explaining verbally during preauthorization conversations that coverage for the services would be denied due to a lack of 24-hour on-site nursing at the facilities.

Brady appealed the denials, asserting his rights under ERISA to a full and fair review and disclosure of specific reasons for the adverse determination. He expressed concern that Blue Cross was violating the Parity Act by imposing a 24-hour on-site nursing requirement for residential treatment centers (RTC) but not for analogous medical or surgical services such as skilled nursing (SNF), subacute rehabilitation, and inpatient hospice facilities. Additionally, Brady expressed concern that Blue Cross imposed national accreditation requirements for Residential Treatment Centers for Children and Adolescents (RTCCA) that were not imposed on other analogues such as rehabilitation or on RTCs generally. Blue Cross rejected these appeals and confirmed in a July 2024 letter that it had denied coverage at both facilities because they did not meet the 24-hour on-site nursing requirement for RTCs and prior authorization was not obtained.

Brady then filed this lawsuit. In count 1, he alleges that Blue Cross violated its fiduciary duties under ERISA by denying coverage in violation of the plan terms and failing to provide adequate review and explanation for the denials. In count 2, Brady alleges that Blue Cross violated the Parity Act by imposing more stringent criteria—namely, the 24-hour on-site nursing requirement and the national accreditation

requirement—for mental health treatment benefits than for substantially all analogous medical or surgical benefits.

Blue Cross filed a motion to dismiss for failure to state a claim upon which relief can be granted, which the Court denied. Blue Cross thereafter filed a second motion to dismiss, this time for lack of subject matter jurisdiction under Rule 12(b)(1). As indicated earlier, the Court converted the motion in part into a motion for summary judgment.

## Discussion

"Federal courts are courts of limited jurisdiction; 'they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.'" *Smart Transp. Div. v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 14 C 7828, 2015 WL 1593082, at *1 (N.D. Ill. Apr. 6, 2015) (quoting *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001)). Article III standing is a constitutional prerequisite to subject matter jurisdiction in every federal court. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). As the party invoking federal jurisdiction, Brady bears the burden of satisfying three elements: (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). For causation, any injury must be "fairly traceable" to the defendant's conduct, but proximate causation is not required. *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Regarding the redressability element, it must be "likely," as opposed to merely "speculative," that the plaintiff's injury will be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61.

If a Rule 12(b)(1) motion for lack of subject matter jurisdiction amounts to an indirect attack on the merits of the plaintiff's claim, a court may treat it as a Rule 12(b)(6) motion rather than a true jurisdictional motion. *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992). When so recharacterized, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 12(d); *Peckmann*, 966 F.2d at 297.

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court may not "make credibility determinations" or "weigh the evidence." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

**A. Redressability**

The Court first addresses Blue Cross's contention that Brady's claim for denial of RTC benefits fails to meet the requirement of redressability. To qualify for RTC benefits, Maple Lake and New Focus must meet the definition of an RTCCA, because both facilities treated A.K.—a minor—for mental health care as defined by the terms of the

insurance plan. Def.'s Mem. of Law in Supp. of Mot. for Summary Judgment, Ex. 1 ("Insurance Plan") at 94. To meet the definition of an RTCCA, the insurance plan requires a facility to meet three requirements: (1) 24-hour on-site nursing; (2) accreditation by one of two national accreditation organizations; and (3) licensure in the state where it is located. Insurance Plan at 94. The third RTCCA facility requirement is not at issue here; it is undisputed that both Maple Lake and New Focus were accredited by the state of Utah. Rather, Blue Cross contends that both facilities fail to meet the first two requirements, and therefore that Brady's injuries are not redressable because benefits are not due under the terms of the plan.

ERISA creates a private cause of action for a participant or beneficiary of a plan governed by ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). For an injury to be redressable under ERISA, the benefits for which a plaintiff seeks payment must be due under the insurance plan's terms. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (explaining that "ERISA was enacted . . . to protect contractually defined benefits" (quotation omitted)). The Court notes that this issue, pitched by Blue Cross as a standing issue, rather obviously overlaps with the merits of Brady's claim.

Brady concedes that both facilities fail to meet the 24-hour on-site nursing requirement, and he provides no evidence that either facility meets the national accreditation requirement. Brady's workaround is that these two unmet requirements run afoul of the Parity Act. Without these two requirements, both Maple Lake and New Focus would meet all remaining requirements to qualify as RTCCAs and therefore

would qualify for payment of benefits under the terms of the plan.

Blue Cross contends that Brady did not sufficiently allege in his complaint that the accreditation requirement violates the Parity Act. It contends that the present case is like *J.W. v. Bluecross and Blueshield of Texas*, No. 21 C 21, 2022 WL 2905657, at *3–4 (D. Utah July 22, 2022), where the court found the plaintiff failed to show redressability because the benefits he claimed were not due under the terms of the plan. In *J.W.*, the facility where the plaintiff's child received treatment failed to meet a requirement to qualify as an RTC. *Id.* The plaintiff did not allege that the unmet requirement violated the Parity Act. Thus the court had no basis to invalidate that requirement; benefits were not due under the terms of the plan; and as a result the plaintiff failed to establish redressability. *Id.* at *4.

The present case is distinguishable from *J.W.* Brady has sufficiently alleged that both unmet RTCCA qualification requirements—the 24-hour on-site nursing requirement and the national accreditation requirement—violate the Parity Act. Blue Cross does not dispute that Brady alleges in his complaint that the 24-hour nursing requirement violated the Parity Act. With regard to the national accreditation requirement, Brady alleges that Blue Cross "imposed accreditation requirements for residential treatment for children and adolescents . . .but did not impose them on other analogues such as . . . residential treatment facilities generally" and that this violated the Parity Act. Am. Compl. ¶¶ 18, 34, 48. These allegations are sufficient to plausibly allege that the national accreditation requirement violated the Parity Act. *See Alliant Energy Corp. v. Bie*, 277 F.3d 916, 920

(7th Cir. 2002).[1]

For these reasons, Blue Cross is not entitled to dismissal or summary judgment for failure to establish redressability for standing purposes.

**B. Traceability**

Blue Cross contends that Brady's injury consisting of denial of RTC benefits for A.K.'s treatment is not fairly traceable to an action of Blue Cross.

**1. Network adequacy**

Blue Cross first maintains that Brady's payment of out-of-network rates is not fairly traceable to its alleged network-adequacy Parity Act violation on the basis that Blue Cross is not required to maintain a network in Utah.

**a. Blue Cross as an ERISA fiduciary**

Under ERISA, an insurance administrator may qualify as a fiduciary when it exercises discretionary authority in administering a plan or making benefit determinations. 29 U.S.C. § 1104(a)(1). The Seventh Circuit has consistently held that an insurance administrator qualifies as an ERISA fiduciary when it has discretion to construe and apply plan provisions and assess participants' entitlement to benefits. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 916–17 (7th Cir. 2013). An insurance administrator is a fiduciary with respect to a particular activity only if plan documents show it was responsible for and had discretionary authority over that activity. *See Plumb v. Fluid Pump Serv. Inc.*, 124 F.3d 849, 854 (7th Cir. 1997).

---

[1] In his opposition brief, Brady takes a step further and asks the Court to consider it undisputed that the accreditation requirement violates the Parity Act on the basis that Blue Cross does not dispute in its motion that the requirement violates the Parity Act. The Court disagrees. Blue Cross's answer denied the allegations in ¶¶ 18, 34, and 48 of the amended complaint. That is enough to show the point is disputed.

Under the applicable plan, Blue Cross processes claims, handles initial appeals, and makes benefit determinations. Insurance Plan at 20, 23; Def.'s Mem. of Law in Supp. of Mot. for Summ. J., Ex. 1 (Suzanne Livorsi Declaration) at 3. Blue Cross concedes in its reply brief that it retains responsibilities undertaken by an ERISA fiduciary, at least with respect to claims for services provided within its service area in Texas. Def.'s Reply Br. at 4 ("BCBSTX is responsible for adjudicating coverage, processing claims, and determining whether a service qualifies as a covered benefit.").

In addition, the insurance plan informs participants that they may "receive care outside [Blue Cross's] service area." Insurance Plan at 152. The "Host Blue"—a Blue Cross Blue Shield licensee in the service area where healthcare services were received, here Regence in Utah—is in charge of contracting with in-network providers. *Id.* The plan, however, provides that Blue Cross "may, but is not required to, in its sole and absolute discretion negotiate a payment" with a non-covered provider outside the Texas service area on "an exception basis." *Id.* at 153. By retaining "sole and absolute discretion" to grant or deny a claim of in-network benefits, Blue Cross, even though it provided that Regence would contract with and create a network of in-network providers, retained enough discretion to remain a fiduciary with respect to service areas outside of Texas. *Id.* Blue Cross cannot contract to provide services and covered care outside of its Texas service area, exercise "absolute" discretion on allowing case-by-case benefits exceptions for healthcare services outside of a Host Blue's network, and expect not to be a fiduciary regarding those discretionary decisions.

**b. Blue Cross's network obligations as a fiduciary**

An ERISA fiduciary must "discharge [its] duties with respect to a plan solely in the

interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Fiduciary duties include loyalty and prudence, which require fiduciaries to administer plans and exercise discretion according to governing instruments and federal law, including the Parity Act. 29 U.S.C. § 1104(a)(1)(D); *Appvion, Inc. v. Retirement Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 943 (7th Cir. 2024). The Parity Act requires "treatment limitations applicable to . . . mental health or substance use disorder benefits" to be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). A plan may not have "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." *Id.* A "treatment limitation" includes "standards related to network composition . . . including standards for provider and facility admission to participate in a network or for continued network participation, including . . . procedures for ensuring the network includes an adequate number . . . of facilit[ies] to provide services under the plan or coverage." 29 C.F.R. § 2590.712(a) & (c)(4)(ii).

In this case, given its fiduciary status, Blue Cross was required to administer the insurance plan in accordance with the Parity Act, even though the underlying Utah network was built by Regence, a Blue Cross Blue Shield licensee. The terms of the insurance plan inform participants that they may receive covered care both inside Texas and "outside [Blue Cross's] service area." Insurance Plan at 152. Yet the only evidence in the record about the adequacy of Blue Cross's network, inside or outside of Texas, is that there is only one RTCCA facility covered under the terms of the Blue Cross plan within 140 miles of Brady's Texas residence. Am. Compl. ¶ 38. Considering this

evidence, a jury could reasonably find that Blue Cross's RTCCA network was inadequate and violated the Parity Act. Accordingly, Blue Cross is not entitled to dismissal or summary judgment on the basis that Brady's injury consisting of payment out-of-network rates for A.K.'s treatment is not fairly traceable to its allegedly inadequate network.

**2. Prior authorization and network searches**

Blue Cross also contends that Brady's failure to conduct network searches for in-network facilities and his failure to obtain prior authorization for A.K.'s treatment at either facility renders his injury not fairly traceable to Blue Cross.

The Supreme Court has made clear that proximate causation is not required for the traceability element of standing; Article III requires only that the plaintiff's injury was "fairly traceable" to the defendant's conduct. *Lexmark*, 572 U.S. at 134 n.6. A plaintiff need not establish that the defendant's conduct was the most immediate cause of the plaintiff's injuries; Article III requires no more than a "meaningful connection" between a defendant's conduct and the plaintiff's injury. *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024) (cleaned up). Brady bears the burden of establishing causation and the other requirements of standing. *Lujan*, 504 U.S. at 560.

In this case, Brady's failure to obtain prior authorization for A.K.'s inpatient care does not defeat the causation requirement. The reason is that the existence of an allegedly inadequate network provides a meaningful causal connection to the injury. Specifically, even if prior authorization could have resulted in in-network coverage, Blue Cross's allegedly inadequate network made that outcome very unlikely, at least as shown on the present record. In short, Blue Cross' allegedly inadequate network has a

meaningful connection to Brady's denial of RTC benefits, which satisfies the traceability element of Article III standing.

The same line of reasoning applies to Brady's claimed failure to conduct network searches or to call Blue Cross to determine if there were in-network providers in Utah or Texas. A network search presumably would have revealed one in-network facility within 140 miles of Brady's Texas residence. But the alleged failure to search for in-network facilities is only one contributing factor to Brady's ultimate denial of RTC benefits. On the present record, the claimed existence of an inadequate network provides a meaningful connection to the denial of RTC benefits.

In short, Blue Cross is not entitled to dismissal or summary judgment on this basis.

**C. Accounting of other participants' funds**

Blue Cross contends in its motion for summary judgment that Brady lacks standing to seek "[a]n order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of [the Parity Act]." Def.'s Mot. at 15. Brady clarifies in his opposition brief that he is not seeking "any relief on behalf of other Plan participants and beneficiaries" aside from himself and A.K. Pl.'s Resp. Br. at 11. Thus the Court need not address Blue Cross's contention.

**D. Alternative standing arguments**

Brady contends in his opposition brief that he has standing to bring his benefits recovery claim independently from his standing to bring his Parity Act claim because A.K.'s treatment could also qualify for mental health care or medical / surgical expense

benefits under the terms of the insurance plan. Blue Cross contests that these arguments are beyond the scope of Brady's amended complaint.

Pleadings focus litigation and ensure that defendants receive "fair notice of each claim against them, as required by the Federal Rules of Civil Procedure." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023). "Many efficiencies are lost when claims or defenses are left out of pleadings and a party then attempts to assert them at later stages." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 479 (7th Cir. 2019). Notwithstanding, because discovery can "uncover[] facts that support new legal theories, parties may seek leave to amend their pleadings." *Ollison v. Gossett*, 136 F.4th 729, 739 (7th Cir. 2025); Fed. R. Civ. P. 15(a)(2). When parties forgo formal invocation of Rule 15 and instead choose to simply make new factual allegations at summary judgment, district courts "retain discretion to interpret new factual allegations or claims presented in a plaintiff's [opposition] brief[] as a constructive motion to amend." *Ollison*, 136 F.4th at 739–40 (citing *Schmees*, 77 F.4th at 488). Although the district court may consider new factual allegations, it is not required to do so, and "[i]t will rarely be appropriate to do so." *Schmees*, 77 F.4th at 490 (holding that the district court did not abuse its discretion by declining to treat the new factual allegations raised in summary judgment briefing as a constructive motion to amend when the plaintiff had the opportunity to amend their complaint and chose not to do so).

The argument Brady advances does not appear to turn on facts newly uncovered in discovery; rather, it is premised upon the terms of the insurance plan. The operative first amended complaint alleged that Maple Lake and New Focus qualified for benefits for residential treatment care under either the definition for an RTC or an RTCCA. Am.

Compl. ¶¶ 15–16. That, quite obviously, differs from a contention that neither Maple Lake nor New Focus needed to qualify as an RTC or RTCCA for benefits to be available. Thus Brady's new argument is outside the scope of his amended complaint. As there is no formal request to amend, the Court need not address at this point whether Brady should be permitted to advance a claim premised on this apparently new theory.

**E. Additional discovery**

Brady incorporates in his opposition brief his previous motion under Rule 56(d) to conduct additional discovery in his opposition brief. This point is effectively moot given the Court's ruling on Blue Cross's motion. The parties may address the need for and a schedule for further discovery at the next status hearing.

**Conclusion**

For the reasons stated above, the Court denies defendant's motion to dismiss [dkt. 61]. The parties are directed to confer regarding a schedule for all further proceedings in the case li light of the Court's ruling and file a joint status report with a proposed schedule by October 16, 2026. The telephonic status hearing set for October 19, 2026 is vacated and reset to October 27, 2026 at 9:05 a.m., using call-in number 650-497-3207, access code 2305-915-8729.

MATTHEW F. KENNELLY
United States District Judge

Date: October 9, 2026